IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BRENDA DENNIS, as Widow and
Wrongful Death Beneficiary of
HUBERT H. DENNIS,

    Plaintiff,                                                No: 1:08-cv-1055-JDB-egb

    v.

PHILLIP SHERMAN, M.D.,

    Defendant.

**ORDER DENYING PLAINTIFF'S THIRD MOTION IN LIMINE**

This lawsuit concerns a claim by Brenda Dennis for medical malpractice against Defendant, Phillip Sherman, in Union City, Tennessee, resulting in the death of Plaintiff's husband, Hubert Dennis. Plaintiff's Third Motion in Limine, filed in four separate Parts, requests that the Court exclude testimony by Michael McAdoo, M.D. ("Dr. McAdoo"), one of the Defendant's expert witnesses. (Docket Entry ("D.E.") Nos. 57, 58, 60, and 79.) Defendant has responded to each Part. (D.E. Nos. 75 and 85.) For the reasons set forth hereinafter, the Court **DENIES** Plaintiff's motion. The Court will address each Part of the motion seriatim.

<u>Parts A and B</u> (D.E. Nos. 57 and 58)

In these sections of the motion, Dennis moves "to exclude any standard of care and causation testimony of [Dr. McAdoo] on the grounds that it is unreliable and therefore, inadmissible. . .." (D.E. No. 57, 3rd Motion in Limine, Part A, pp. 1-2.)  In particular, Plaintiff avers that Dr. McAdoo's deposition testimony reflects a "faulty understanding of what

constitutes the standard of care in a community similar to Union City, Tennessee," and that he "lacks sufficient knowledge of the medical community in Union City, Tennessee, as required by Tennessee Code Annotated § 29-26-115(a)(1)" (the "locality rule"). (D.E. No. 57, 3rd Motion in Limine, Part A, p. 4; D.E. No. 8, 3rd Motion in Limine, Part B, p. 1.) As a result, Dr. McAdoo should not be allowed to testify as an expert in this case.

In Daubert v. Merrell Dow Pharms., Inc., the United States Supreme Court reiterated that the Federal Rules of Evidence require a trial judge to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The linchpin of the Court's analysis in Daubert was Fed. R. Evid. 702, which states in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As a result, a trial court, when facing a proffer of scientific testimony, must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93.

The Tennessee Medical Malpractice Act ("TMMA") defines the relevant standard of care in a malpractice action as "[t]he recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred." Tenn. Code Ann. § 29-26-115(a)(1). Stated differently, "[t]he

standard of care is determined by whether a physician exercises the reasonable degree of learning, skill, and experience that is ordinarily possessed by others of his profession." Godbee v. Dimick, 213 S.W.3d 865, 896 (Tenn. Ct. App. 2006) (internal citation and quotation marks omitted). The testifying expert in a medical malpractice case "must present facts demonstrating how he or she has knowledge of the applicable standard of professional care either in the community in which the defendant physician practices or in a similar community." Kenyon v. Handal, 122 S.W.3d 743, 762 (Tenn. Ct. App. 2003). A testifying expert must offer factual support to establish his or her familiarity with the defendant's community; a "bare assertion of familiarity" with the standard of care in the defendant's community is legally insufficient under the locality rule. Williams v. Baptist Mem'l Hosp., 193 S.W.3d 545, 554 (Tenn. 2006).

When asked in his deposition to articulate the standard of care, Dr. McAdoo replied, "What I think it to mean is the general acceptable quality of the care that's administered or delivered by the medical community in a particular locale." (D.E. No. 57, 3rd Motion in Limine, Part A, p. 5.) Dennis avers that this is a misstatement of the applicable standard because the "generally accepted practice" language is incorrect. (Id. at pp. 5-6.) Moreover, at various points during his deposition, Dr. McAdoo indicated that he believed the standard of care was a national standard, or, alternatively, was influenced by committees, hospital policies, and surveys. (Id. at pp. 7-10.) Because these are not accurate statements regarding the standard, Plaintiff argues that Dr. McAdoo "can not [sic] correctly define the standard of care." (Id. at p. 5.) Finally, Plaintiff contends that Dr. McAdoo's knowledge of Union City, Tennessee is based merely upon "generalities and assumptions," and that in his deposition, he did not demonstrate sufficient familiarity with the specifics of the medical community in Union City, vis-à-vis the numbers and

types of practitioners, referral services, and ancillary services offered. (D.E. No. 58, 3rd Motion to Dismiss, Part B, pp. 2-8.)

Dr. McAdoo later submitted an affidavit in which he explained, *inter alia*, that he "understand[s] the 'standard of care' to also mean what a reasonably prudent physician with the same education, skill and training would do under the same or similar circumstances in a same or similar community," and that he referenced committees, surveys, and hospital standards in his deposition only as additional considerations to augment the accurate definition of the standard of care. (D.E. No. 75, Exhibit A, McAdoo Affidavit, ¶¶ 1-2.) Furthermore, in his affidavit, he goes into factual detail about his familiarity with both Union City, Tennessee and the medical community therein, as well as the similarities between Union City and Milan, Tennessee—the latter being where Dr. McAdoo practices. (Id. at ¶¶ 3-4.) In short, through this affidavit, Dr. McAdoo demonstrates his familiarity with all of the points about which Plaintiff claimed he was too uninformed to qualify as an expert under the locality rule. Sherman, citing the opinion in Pullum v. Robinette, 174 S.W.3d 124 (Tenn. Ct. App. 2004), submits that Dr. McAdoo's affidavit, considered in conjunction with his deposition testimony and his planned trial testimony, establishes that he is sufficiently qualified to testify as to the standard of care in Union City, Tennessee. (D.E. No. 75, Response to 3rd Motion to Dismiss, Parts A-C, p. 2.)

In Pullum, the plaintiff in a medical malpractice action attempted to offer the testimony of Dr. Ronald Neer. 174 S.W.3d at 127. The defendant sought to exclude Dr. Neer's testimony "because his pre-trial deposition did not reflect that he met the statutory requirements for proof in malpractice cases." Id. at 128. After his deposition, Dr. Neer educated himself as to the relevant standard of care in the locality and filed affidavits supplementing his deposition responses. Id. at 133-34. He was also questioned extensively at trial about his knowledge of the

relevant standard of care before being allowed to testify, such that the trial judge was satisfied as to his qualifications as an expert. Id. at 134. The defendant argued that Dr. Neer should not have been permitted to testify because his deposition responses indicated he was unfamiliar with the applicable standard of care. The Tennessee Court of Appeals disagreed:

> Dr. Neer's qualifications were attacked based upon his testimony at a deposition during which Plaintiff was under no duty to elicit proof. [. . .] It was within this Court's discretion to permit proof relative [sic] to remain open until trial on the issue of Dr. Neer's familiarity with the standard of care for Spring Hill, Tennessee or a similar community. The Court was satisfied that Dr. Neer presented as a competent witness pursuant to all applicable statutes.

Id. at 137.

The Pullum court went on to note, however, that the defendant's primary objection to Dr. Neer's testimony was the trial judge's grant of the doctor's request to supplement his deposition responses:

> Dr. Robinette's real complaint is not so much with the denial of the motion in limine itself, but rather is with the effect of that denial— the opportunity for the witness to improve his knowledge of the local community and the standard there. [. . .] According to Dr. Robinette, this procedure thwarted the purposes of discovery and eviscerated the motion in limine process.

Id. at 139. The court disagreed with Dr. Robinette, noting that "[i]t is not uncommon for experts whose qualifications are challenged to present additional or supplemental testimony (by affidavit, deposition, or at trial) regarding those qualifications. We know of no rule prohibiting this practice . . .." Id. Finally, the court found that the defendant suffered no prejudice as a result of Dr. Neer's efforts to supplement his knowledge of Spring Hill, especially given the fact that his additional learning did not cause him to change his opinion about the degree to which Spring Hill was similar to his own community. Id. at 140. Thus, Pullum stands for the proposition that

an expert whose credentials are challenged after his deposition may add to his responses and demonstrate his familiarity with the requisite standard of care through, *inter alia*, the submission of affidavits. *See also* Williams v. Baptist Mem'l Hospital, 193 S.W.3d 545, 553 (Tenn. 2006) (experts may file supplemental affidavits, but such affidavits, when viewed alongside the deposition testimony, must establish that the expert meets the requirements of Tenn. Code Ann. § 29-26-115); Stovall v. Clarke, 113 S.W.3d 715, 723 (Tenn. 2003) (an expert in a medical malpractice case should be allowed to file supplemental information regarding his qualifications); Wilson v. Patterson, 73 S.W.3d 95 (Tenn. Ct. App. 2001) (trial court should have permitted testifying expert to supplement his discovery responses with affidavits).

Turning to the instant case, in light of Pullum, it is clear that Dr. McAdoo's supplementary affidavit is sufficient to demonstrate his familiarity with the medical community of Union City, Tennessee, as well as its similarity to the medical community in Milan, Tennessee. Just like the defendant in Pullum, the Plaintiff has suffered no prejudice on account of Dr. McAdoo's subsequent attempts to educate himself, given the fact that he has not changed his opinions as to the medical community in Union City and its likeness to Milan. Thus, even accepting as true all of Plaintiff's objections as to Dr. McAdoo's ability to articulate the proper standard of care in his deposition, he nevertheless has cured any such deficiencies by the filing of his affidavit. As a result, the Court finds that Plaintiff's objections in this regard are without merit.

### Part C (D.E. No. 60)

Dennis next seeks to exclude Dr. McAdoo's testimony "as it relates to the standard of care for general surgery or for an 'attending physician.'" (D.E. No. 60, 3rd Motion in Limine,

Part C, p. 1.) In particular, because Dr. McAdoo is a family practice physician, Plaintiff argues that he cannot satisfy the requirements of Tenn. Code Ann. § 20-26-115(b),[1] which makes it a requirement that a testifying expert "was licensed to practice in the state [. . .] a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty [. . .] during the year preceding the date that the alleged injury [. . .] occurred."

The Court is somewhat unclear as to the nature of Plaintiff's objection on the grounds of Tenn. Code Ann. § 29-26-115(b). Dennis maintains that she "does not dispute that the roles of a general surgeon and attending physician are relevant to this case, but she does not believe that Dr. McAdoo is qualified to testify on the standard of care for a general surgeon practicing in Union City, Tennessee." (D.E. No. 60, 3rd Motion in Limine, Part C, p. 4.) Insofar as Plaintiff's objection is to Dr. McAdoo's ability to satisfy the locality rule, such objection has been rejected, *supra*, in the Court's discussion of Tenn. Code Ann. § 29-26-115(a)(1). With respect to the requirements of Tenn. Code Ann. § 29-26-115(b), Dr. McAdoo's affidavit establishes that he was performing surgical consults—just like the Defendant—during 2005-2006, including "the dates the alleged injury occurred." (D.E. No. 75, Exhibit A, McAdoo Affidavit, ¶ 5.) Moreover, his affidavit also makes clear that he is "familiar with the standard of care of general surgeons specifically as it relates to surgical consults for small bowel obstructions" based upon his thirty years of practice, in which he has "regularly treated and managed small bowel obstructions, and regularly consult[ed] a surgeon to determine if surgical treatment is necessary." (Id. at ¶ 6.)

Based upon these statements, Dr. McAdoo has established that he was practicing in the same specialty as the Defendant at the same time as the alleged injury that forms the predicate of

---

[1] In her motion, Plaintiff correctly quotes the language from the applicable subsection of the TMMA—115(b)—but incorrectly cites it as subsection 115(c).

this lawsuit. This experience, combined with his averred knowledge of surgical consults on small bowel obstructions, is sufficient to satisfy the requirement that his testimony be "relevant to the issues in the case." Tenn. Code Ann. § 29-26-115(b). Thus, any objection by Dennis on the basis of Tennessee Code Annotated § 29-26-115(b) is without merit.

Part D (D.E. No. 79)

Finally, Plaintiff contends that Dr. McAdoo should not be permitted to testify because "he does not apply the standard of care to facts to determine the cause of Mr. Dennis' death or his conclusions that Dr. Sherman's treatment of Mr. Dennis was appropriate." (D.E. No. 79, 3rd Motion in Limine, Part D, p. 1.) Pointing to the above-quoted language from Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), Dennis contends that because Dr. McAdoo "did not apply the facts of the case to the standard of care," the Court should exclude his testimony.[2] (D.E. No. 79, 3rd Motion in Limine, Part D, p. 3.) Plaintiff cites portions of Dr. McAdoo's deposition in which he stated that "[t]here are lots of things that can contribute to death, and only the Great Physician can determine [definitively the cause of death]," and "I think that overall, Dr. Sherman's care of Mr. Dennis in this situation, the circumstances, and relying on his consults and the support that he had was – his thinking was appropriate." (Id.) Based upon these passages, Plaintiff avers that Dr. McAdoo did not correctly apply the standard of care in his analysis, and as a result, his statements as to the propriety of Dr. Sherman's actions were merely conclusory. (Id. at pp. 3-4.)

Defendant, in his response, contends that this section of Plaintiff's motion relies upon isolated statements that have been "plucked from [McAdoo's] 113 page deposition, and which

---

[2] The Court assumes that Plaintiff meant to say that Dr. McAdoo "did not apply the standard of care to the facts of the case."

8

ignore[] other relevant testimony of Dr. McAdoo's which is contradictory to Plaintiff's position." (D.E. No. 85, Response to 3rd Motion in Limine, Part D, p. 1.) In other words, Defendant contends that Plaintiff has taken Dr. McAdoo's statements concerning the "Great Physician" out of context, and has ignored other portions of his deposition in which he gives reasoned explanations of his conclusion that Dr. Sherman acted properly, supported by a correct articulation of the standard of care. To support his position, Defendant cites the portion of Dr. McAdoo's deposition when he said, when asked about the cause of death:

> I think he had sepsis. I think he had an intestinal situation but it – specifically what the definitive cause was, I'm not sure that I – I can say what that was . . . I think he died from sepsis. I think he became septic. I think he did have aspiration pneumonia and did have some renal failure. Something was going on in the abdomen.

(D.E. No. 85, Exhibit A, Excerpt of McAdoo Deposition.) With respect to Plaintiff's claim that Dr. McAdoo's opinions were merely conclusory, Defendant points to his Rule 26 disclosures, which note that Dr. McAdoo has reviewed, *inter alia*, the relevant medical records and the death certificate, and that he is familiar with the accepted level of professional practice for family practice physicians in Union City, Tennessee. (D.E. No. 85, Response to 3rd Motion in Limine, Part 3, p. 3) (citing D.E. No. 34, Defendant's Rule 26 Disclosures, ¶¶ 2-3).

While the Court is inclined to agree with Defendant that Plaintiff perhaps has taken some of Dr. McAdoo's deposition testimony out of context, the Court need not explore this issue further because its rulings on Parts A and B herein render Part D moot. Dennis, in support of this portion of her motion, relies primarily on Daubert once again in an attempt to demonstrate that Dr. McAdoo either does not understand the relevant standard of care or did not apply it correctly to the facts. The gravamen of Plaintiff's objection seems to be that Dr. McAdoo's testimony is speculative because he "refuses to apply the standard of care," but Plaintiff's motion does not

9

contain any proof of this assertion. (D.E. No. 79, 3rd Motion in Limine, Part D, p. 4.) That is, although Plaintiff has proffered two portions of Dr. McAdoo's deposition in which he gave equivocal responses to the questions asked, there is no reason to conclude that these responses were "speculative" or that he formed his opinions while applying an erroneous standard of care. His subsequent affidavit makes clear that he did, in fact, understand and apply the correct standard, as the Court has noted *supra*. The mere fact that some of his responses may have been vague does not, without more, indicate that such answers were formed without reference to the proper standard of care. If Plaintiff intends to demonstrate that Dr. McAdoo's responses are vague or inadequate, she may do so on cross-examination, as such arguments go to the weight of his testimony and not the admissibility thereof. *See* U.S. v. Marion, 477 F.2d 330, 332 (6th Cir. 1973) ("final determination of credibility of the witness is a responsibility reserved to the jury").

Indeed, it appears to the Court that the substance of Plaintiff's objection in Part D is merely a rehashing of her arguments in Parts A and B—namely that Dr. McAdoo, in his deposition, did not properly *articulate* the applicable standard of care. The Court has addressed and rejected this argument above, and as a result, Part D of the motion in limine is moot. Accordingly, Plaintiff's Third Motion in Limine is hereby **DENIED** in its entirety.

**IT IS SO ORDERED** this, the 11th day of May, 2010.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE