IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BRENDA DENNIS as Widow and
Wrongful Death Beneficiary of
HUBERT H. DENNIS,

    Plaintiff,

v.   No. 1:08-cv-01055-JDB-egb

PHILIP A. SHERMAN, M.D.,

    Defendant.
_____

**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION IN LIMINE, GRANTING DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME TO FILE EXCLUSIONARY MOTION, AND GRANTING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS, JENNIFER JOHNSON, M.D.**
_____

Before the Court are three motions related to the testimony of Plaintiff's expert witness, Jennifer C. Johnson, M.D. This is a medical malpractice case brought by Plaintiff Brenda Dennis as widow and beneficiary of her deceased husband, Hubert H. Dennis, against Defendant Philip A. Sherman, M.D. The Plaintiff's original expert, Dr. Richard Schwartz, died after being deposed but prior to trial. As a result, on February 11, 2010, after the deadline for disclosing expert witnesses had expired, Dennis sought leave from the Court to designate a new expert witness, Dr. Johnson. (Docket Entry ("D.E.") No. 90.) Plaintiff contended that she should be permitted to use a substitute expert witness based upon the unavailability, the death, of Dr. Schwartz. (Id.) The Defendant opposed Plaintiff's motion, arguing that Dennis should be limited to Federal Rule of Civil Procedure 32(a)(4)'s remedy of utilizing Dr. Schwartz's

1

deposition at trial.[1] (D.E. No. 94.) In the alternative, Sherman argued that, if the Court allowed Dr. Johnson to testify as an expert witness, her testimony "must be limited in scope to the area and opinions disclosed and testified to by Plaintiff's original expert, Dr. Schwartz." (Id.)

On March 9, 2010, the Court granted Plaintiff's motion to designate Dr. Johnson as an expert witness. (D.E. No. 96.) However, in accordance with the Sixth Circuit's decision in Roberts v. Galen of Virginia, Inc., 325 F.3d 776, 784 (6th Cir. 2003), the Court held that Dr. Johnson's testimony should be limited in scope to the subject matter and opinions contained in the deposition of Dr. Schwartz. (D.E. No. 96 at 3.) The Court also granted the Defendant additional time to depose Dr. Johnson and, if necessary, to file any motions relating to her testimony. (Id.) The Court's order directed the parties to submit a proposed scheduling order for completing the remaining expert discovery. (Id.) On March 22, 2010, the Court entered a supplemental scheduling order allowing the Defendant to take the deposition of Dr. Johnson by June 1, 2010, and to file motions within twenty days thereafter. (D.E. No. 97.) The order also granted Plaintiff ten days to respond to such motions. (Id.)

On June 22, 2010, Defendant submitted a motion in limine to exclude the testimony of Dr. Johnson. (D.E. No. 104.) According to the motion, the parties deposed Dr. Johnson on April 27, 2010. (Id.) Defendant argues that Dr. Johnson's testimony went beyond the subject matter and opinions contained in Dr. Schwartz's deposition testimony and should therefore be excluded.

---

[1] Fed. R. Civ. P. 32(a)(4) governs unavailable witnesses and provides in pertinent part:

> A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
> (A) that the witness is dead;
> . . . .

(Id.)

The Plaintiff has filed two responses to the motion in limine. On June 28, 2010, Dennis moved to strike the Defendant's motion as untimely, asserting that Sherman failed to comply with the twenty day limitation as required by the Court's March 22, 2010 order. (D.E. Nos. 108, 109.) The Plaintiff then submitted a substantive response to the Defendant's motion in limine on July 2, 2010. (D.E. No. 114.) Sherman responded to the Plaintiff's motion on July 1, 2010, in which he also requested an enlargement of the time within which to file his motion to exclude the testimony of Dr. Johnson. (D.E. No. 112.)

I. Plaintiff's Motion to Strike the Defendant's Motion in Limine and Defendant's Motion to Enlarge the Time to File an Exclusionary Motion

The parties indicated that the Defendant deposed Dr. Johnson on April 27, 2010. (D.E. No. 104 at 2; D.E. No. 108 at 2; D.E. No. 117 at 1.) With the twenty day limitation on motions, Sherman's motion in limine should have been filed by May 17, 2010. However, he did not file it until June 22, 2010, thirty-six days past the deadline.[2] In response, Dennis has filed a motion to strike the Defendant's motion in limine as untimely. In his response to the Plaintiff's motion to strike, the Defendant does not challenge that his motion was filed beyond the deadline. (See D.E. No. 112 at 1.) Rather, he asserts that his focus was on the June 1, 2010 deadline for

---

[2] Although the parties agree that the Defendant's motion in limine was submitted beyond the deadline in the Court's supplemental scheduling order, they dispute the number of days he was late. Dennis asserts that, according to the plain language of the Court's order, Sherman's motion was thirty-five days late. (D.E. No. 117 at 1.) In contrast, Defendant claims that he did not receive the deposition transcript of Dr. Johnson until on or about May 17, 2010, and that he should have had twenty days from that date to file his motion. (D.E. No. 122 at 2.) Therefore, Sherman argues that his motion was only fifteen days late. (Id.) However, the Court's order clearly required that the motion be filed within twenty days after Dr. Johnson's deposition. (D.E. No. 97.) If Defendant had not received a copy of Johnson's deposition before the May 17, 2010 deadline, he should have sought additional time from the Court to file his motion. Thus, the Court agrees with Plaintiff that the Defendant's motion was filed more than fifteen days past the deadline. However, the Court's calculation places the filing at thirty-six days past the deadline, rather than thirty-five as Dennis contends.

3

deposing Dr. Johnson and that he merely neglected to note the additional deadlines in the Court's supplemental scheduling order.  (Id. at 1-2.)

Sherman relies on Federal Rule of Civil Procedure 6(b) in his opposition to the Plaintiff's motion to strike and in support of his motion to enlarge the time to file his exclusionary motion. Where, as here, a party files a motion beyond a deadline established by the Federal Rules of Civil Procedure or by order of the court, the motion is governed by Rule 6(b)(1)(B).  That rule provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

Although the Rules of Procedure do not define "excusable neglect," the United States Supreme Court, in Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993),[3] provided some insight into the meaning of the phrase.  There, the Court stated that "excusable neglect" was "a somewhat 'elastic concept,'" id. at 392, and a court's determination of what constitutes excusable neglect must be an "equitable one, taking account of all relevant circumstances surrounding the party's omission."  Id. at 395.  Pioneer established "a more liberal definition of what constitutes excusable neglect when an individual seeks a motion for an extension of time in the district court . . . ."  United States v. Thompson, 82 F.3d 700, 702 (6th Cir. 1996).  The Supreme Court found that "by empowering the courts to accept late filings 'where the failure to act was the result

---

[3]Although the Pioneer Court was discussing the meaning of the phrase in the context of a bankruptcy case, it indicated that its interpretation was equally applicable to Federal Rule of Civil Procedure 6(b).  Id. at 391-92. Indeed, federal courts have consistently relied on Pioneer in non-bankruptcy settings.  See, e.g., Howard v. Nationwide Prop. & Cas. Ins. Co., 306 F. App'x 265, 267 n.1 (6th Cir. 2009) ("Although Pioneer arose from a bankruptcy proceeding, its discussion of excusable neglect also applies to Federal Rule of Civil Procedure 6(b).").

excusable neglect,' Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." Pioneer, 507 U.S. at 388 (citation omitted). Factors a court should weigh when considering a motion under Rule 6(b) include "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."[4] Id. at 395. Therefore, determining whether Sherman should be permitted to file his motion beyond the May 17, 2010 deadline requires this Court to weigh the factors as set forth by Pioneer. The Court must also "tak[e] account of all relevant circumstances surrounding [Dr. Sherman's] omission." Id.

A.  Analysis of Pioneer Factors

   1.  Danger of Prejudice to the Plaintiff

Dr. Sherman asserts that the Plaintiff would suffer no danger of prejudice if the Court granted his motion. (D.E. No. 112 at 9.) In reply, Dennis argues that she will be harmed because his motion seeks to exclude her substitute expert's testimony and would therefore force her to go to trial with only the deposition testimony of the now deceased Dr. Schwartz. (D.E. No. 117 at 2-3.) However, as Dr. Sherman correctly points out, the prejudice of which the Plaintiff complains would not arise from the Court granting the Defendant additional time to file his

---

[4] Panels of the Sixth Circuit have disagreed over whether Pioneer created four or five factors, disputing whether "the reason for the delay" and "including whether it was within the reasonable control of the movant" is one factor or two. Compare United States v. Munoz, 605 F.3d 359, 368 n.5 (6th Cir. 2010) ("It appears to this panel that the four-factor division is more faithful to the Pioneer Court's language."), with Nafziger v. McDermott Int'l, Inc., 467 F.3d 514, 522 (6th Cir. 2006) ("[T]he governing legal standard for excusable-neglect determinations is a balancing of five principal factors . . . ."). For the purposes of this decision, the Court will consider the third and fourth factors together.

exclusionary motion, but rather from the substance of the underlying motion itself. This is not the type of danger contemplated by Pioneer. See United States v. Munoz, 605 F.3d 359, 371 (6th Cir. 2010) (holding that the government's burden of preparing for trial and the defendant's benefit of hearing the government's case "would [have been] equally true had the motion been filed timely" and therefore did not weigh against granting the defendant leave to file an untimely motion). Rather, examples of harm a non-movant might face from an untimely filed motion include such issues as a necessary witness's lost memory, see id., or delay in receiving a monetary payment. Tri-Corner Invs., LLC v. First Def. Int'l Grp., Inc., 361 F. App'x 629, 632 (6th Cir. 2010).

The prejudice the Plaintiff faces is the same she would face had the Defendant filed his motion in limine in accordance with the Court's supplemental scheduling order. Thus, the Court does not consider the Plaintiff's argument persuasive. This factor weighs in favor of the Defendant.

    2.    Length of Delay and Its Potential Impact on Judicial Proceedings

The Defendant's motion in limine was filed thirty-six days past the scheduling order deadline. Although the delay is not an insignificant amount of time, any impact on the judicial proceedings would be minimal. The parties have had sufficient time to file responses to all three motions presently before the Court, and the October 18, 2010 trial date in this case has not been affected.

In Nafziger v. McDermott International, Inc., 467 F.3d 514, 524 (6th Cir. 2006), the Sixth Circuit upheld a district court's denial of leave to amend under Rule 6(b) after the Plaintiff was thirty-nine days late in filing an amended complaint. However, the district court in that case had

dealt with "numerous instances of 'previous dilatory conduct,' accompanied by the court's 'repeated warnings,' which 'insult[ed] the court's dignity' and 'created a tortured process.'" Id. at 523. Even under those circumstances the Sixth Circuit seemed to acknowledge that it would have been within the discretion of the district court to permit the late filing. See id. at 524.

Here, Dr. Sherman has not engaged in a pattern of delays or dilatory tactics as the court faced in Nafziger. Furthermore, although the Court acknowledges that thirty-six days is a substantial delay, the Defendant's untimely motion in limine has not adversely impacted this case's proceedings. Thus, the Court finds that this factor weighs in favor of the Defendant.

        3.        Reason for the Delay, Including Whether Delay Was Within Defendant's Control

To explain his delayed motion in limine, the Defendant contends that he simply failed to take note of the deadline set out in the Court's supplemental scheduling order. (D.E. Nos. 112 at 1-2, 113 at 1-2.) He states that he focused on the June 1, 2010 deadline for deposing Dr. Johnson but overlooked the additional deadlines provided therein. Failure to note a deadline usually does not constitute "excusable neglect." See Pioneer, 507 U.S. at 392; Howard v. Nationwide Prop. & Cas. Ins. Co., 306 F. App'x 265, 267 (6th Cir. 2009). Clearly, the Defendant's belatedness was within his control, and this factor weighs in favor of Ms. Dennis.

        4.        Good Faith of Defendant

The parties agree that the last factor, whether the movant acted in good faith, weighs in favor of the Defendant. Dr. Sherman asserts that he acted in good faith, and the Plaintiff acknowledges that there is no evidence of an intent by the Defendant to prejudice her case or delay the proceedings. Thus, the Court will consider the Defendant's good faith in favor of permitting his late filing.

B.	Balancing of Pioneer Factors

In weighing Pioneer's factors, the Court finds that three—danger of prejudice to the non-movant, length of the delay and its potential impact on judicial proceedings, and whether the movant acted in good faith—weigh in favor of granting Dr. Sherman additional time to file his motion in limine.  Conversely, one factor—the reason for the delay, including whether it was within the reasonable control of the movant—weighs in favor of Dennis.  On the balance, the Court finds that this is an appropriate instance for granting the Defendant additional time within which to file his motion in limine.

The Supreme Court stated in Pioneer that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect . . . ."  507 U.S. at 392.  However, the Court also noted that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness . . . ."  Id. at 388.  Although this Court would not typically grant leave to a party whose failure to note the deadlines in a scheduling order caused him to miss a deadline, the Court recognizes the unusual circumstances under which the Defendant's motion arose.  The Pioneer Court also "consider[ed] significant" that the circumstances surrounding the party's delay were "outside the ordinary course in bankruptcy cases."  Id. at 398.  Likewise, this Court considers significant the unusual circumstances surrounding the present motions.

In March 2010, almost two years after the initiation of this case and following the expiration of the deadline for expert witness disclosures, the Plaintiff's original expert witness passed away, and the Court gave the Plaintiff the opportunity to designate a new expert witness.  The Defendant, having already deposed the Plaintiff's original expert, was placed in the position

of having to defend against a new expert witness with potentially new or contradictory testimony. For that reason, the Court granted Dr. Sherman time to depose the new expert, Dr. Jennifer Johnson, and entered a supplemental scheduling order governing any exclusionary motions related to her testimony. Although the Defendant should have carefully reviewed each new deadline set out in the supplemental scheduling order, the Court does acknowledge that the deadline for filing a motion related to Dr. Johnson was different than the deadline for other motions. In addition, the Court notes that it was for reasons entirely out of Dr. Sherman's control that he was faced with the burden of defending against a new expert.

Considering both the factors set forth by the Supreme Court in Pioneer and the procedural posture under which the Plaintiff's motion in limine arose, the Court finds that the Defendant's untimely motion was due to "excusable neglect." This is an appropriate situation for the Court to grant the Defendant leave under Federal Rule of Civil Procedure 6(b) and consider the merits of his motion. Thus, Dennis' motion to strike the Defendant's motion in limine is DENIED, and Dr. Sherman's motion to enlarge the time within which to file his motion in limine is GRANTED. The Court now turns to the merits of the Defendant's motion in limine to exclude Dr. Johnson's testimony.

II.     Defendant's Motion in Limine to Exclude the Testimony of Plaintiff's Expert Witness Jennifer C. Johnson, M.D.

The Court's March 9, 2010 order granting Dennis' motion to designate Dr. Jennifer Johnson as a substitute expert witness required that "Dr. Johnson's testimony . . . be limited in scope to the subject matter and opinions contained in the deposition of the Plaintiff's previous expert, Dr. Schwartz." (D.E. No. 96 at 3.) Relying upon the decision in Roberts, 325 F.3d at

9

784, the Court decided that "the most 'sensible' course of action would be to allow Plaintiff to substitute Dr. Johnson as an expert witness, but to limit the scope of her testimony so as to prevent any 'contradictory evidence' that could prejudice the Defendant." (Id.) The Defendant has now filed a motion in limine to the exclude the testimony of Dr. Johnson on the grounds that it is not limited in scope to the subject matter and opinions contained in Dr. Schwartz's deposition testimony. (D.E. No. 104.) He contends that the Court must exclude Dr. Johnson's testimony and rely on the deposition of Dr. Schwartz because refusing to do so "would be to allow Plaintiff to have a second bite at the apple." (Id. at 7.) In response, the Plaintiff argues that the opinions of Drs. Schwartz and Johnson are "substantially similar" and that the Defendant has "cherry-picked" portions of Dr. Johnson's testimony to create the appearance of inconsistency. (D.E. No. 114 at 2.) The Court will consider each issue raised by the Defendant in turn.

A.      Fields of Medicine Practiced by Drs. Schwartz and Johnson

The first distinguishing aspect that the Defendant raises relates to the fields of medicine practiced by Drs. Schwartz and Johnson. According to Sherman, because "Dr. Schwartz is a general surgeon" and "Dr. Johnson is trained in internal medicine and describes herself as a primary care provider/attending," the two experts "looked at this case from . . . different perspective[s]." (D.E. No. 104 at 2.) Dr. Sherman argues that this difference is prejudicial to him because the Plaintiff has obtained an expert to "zero in" on his field of medicine now that Dr. Escarcega, the surgeon consulting on Mr. Dennis's care, is no longer a defendant in the case. (Id. at 4.) In response, Ms. Dennis asserts that the difference "has nothing to do with subject matter and opinions" and is therefore irrelevant. (D.E. No. 114 at 3.)

The Court's order designating Dr. Johnson as an expert witness limited the scope of the subject matter and opinions to which she could testify. Unless the difference in Drs. Schwartz and Johnson's fields of medicine causes her to exceed the bounds of Dr. Schwartz's deposition testimony, that difference, in and of itself, does not require that her testimony be excluded. Thus, the Defendant's argument is not well-taken. The Court will proceed to the substance of the two expert's testimony.

B.  Testimony Regarding What Type of Doctor Should Have Treated Mr. Dennis

The Defendant asserts that "Dr. Schwartz testified that a general surgeon should have been taking care of Mr. Dennis at least after the first day's examination because you're looking at partial bowel obstruction versus ileus." (D.E. 104 at 2.) He argues that "Dr. Schwartz further testified that it is the obligation of the consulting general surgeon to stay on the case as long as necessary to rule out the need for surgery or . . . take the patient on his service." (Id.) In comparison, Dr. Sherman states that "Dr. Johnson testified that either a general surgeon or a family care provider should be able to diagnose a small bowel obstruction equally well, and that early on, it does not matter i[f] a small bowel obstruction is treated by a general surgeon or by a family practice/internal medicine doctor." (Id. at 3.)

In response, the Plaintiff argues that Dr. Sherman has attempted to take Dr. Schwartz's testimony out of context. (D.E. No. 114 at 4.) She claims that Dr. Schwartz actually testified that after Dr. Sherman chose to remain the attending physician, it was his responsibility to re-engage a surgeon if necessary. (Id.) The Plaintiff also focuses on Dr. Schwartz's testimony that it was the obligation of the consulting general surgeon to stay on the case as long as necessary to rule out the need for surgery. She argues that Dr. Schwartz's testimony related how he would

11

have proceeded at his own hospital, not what practice Drs. Sherman and Escarcega should have followed.  (Id. at 5-6.)  Dennis further asserts that Dr. Escarcega was consulted on the case and ruled out the need for surgery and that Dr. Sherman agreed.  (Id. at 6-7.)  Finally, the Plaintiff responds that Dr. Johnson did not have an opinion as to what type of doctor was better suited to treat Mr. Dennis.  (Id. at 8-9.)

The Court finds that there is a contradiction in the opinions of Drs. Schwartz and Johnson as to what type of doctor should have been treating Mr. Dennis.  In his deposition testimony, Dr. Schwartz clearly stated "that a general surgeon should have been taking care of this patient, at least after the first day's examination . . . ."  (Depo. of Schwartz 74, D.E. No. 105-1.)  In contrast, when asked whether a family practice physician or a general surgeon was better suited to diagnose a bowel obstruction or a partial bowel obstruction, Dr. Johnson responded that "either one could and should do it equally well."  (Depo. of Johnson 84-85, D.E. No. 106-1.)  She further testified that "[e]arly on, it really doesn't make any difference [which type of doctor is treating the patient].  We all are trained to do the appropriate workup and followup of a patient until we have a definitive diagnosis and a path to follow."  (Id. at 103.)  These excerpts present a clear difference in the testimony of Drs. Schwartz and Johnson.  Dr. Schwartz was of the view that Dr. Escarcega, the general surgeon, should have been treating Mr. Dennis.  Dr. Johnson, on the other hand, opined that either Dr. Sherman or Dr. Escarcega could have treated the patient equally well.

C.      Testimony Regarding Dr. Escarcega's Diagnosis

The Defendant points to the following excerpts of the depositions of Drs. Schwartz and Johnson:

> Dr. Schwartz: "On the next morning, Dr. Escarcega writes his abdomen's flat; there's peristalsis present, but there's no clinical evidence of bowel obstruction, which is hard to understand given his previous history, his vomiting, his dehydration and the x-rays. The radiologist says, 'highly suspicious for small bowel obstruction.'" (Depo. of Schwartz 52, D.E. No. 105-1.)
>
> "All I can go by is Dr. Escarcega's note, and he – all I can go by is what he wrote, and he said, 'peristalsis present.' So if he says peristalsis is present, then he doesn't have an ileus because there's no peristalsis in an ileus. He says there's 'no clinical evidence of bowel obstruction' – obviously I disagree with him." (Id. at 67.)
>
> Dr. Johnson: "[Dr. Escarcega] examined the patient, found his abdomen soft, noted that bowel sounds were present, which in his mind excluded a bowel obstruction . . . I believe he (Mr. Dennis) probably got better at that time. So at the time the surgeon signed off the case and pulled the NG tube, Mr. Dennis had improved." (Depo. of Johnson 63-64, D.E. No. 106-1.)

(D.E. No. 104 at 3.) The Court finds some disagreement in the experts's view of Dr. Escarcega's evaluation and diagnosis. Schwartz is critical of Dr. Escarcega's finding that "no clinical evidence of bowel obstruction existed" and stated that he "obviously . . . disagree[d] with him." (Depo. of Schwartz at 52, 67, D.E No. 105-1.) To the contrary, Dr. Johnson seems to agree with that view that Dennis was not showing signs of bowel obstruction and was improving. The Court finds these excerpts to be contradictory.

D.  Testimony Regarding When Patient's Chance of Survival Ended and When Patient Should Have Been Taken to Surgery

Dr. Sherman argues that Drs. Schwartz and Johnson are in disagreement over when Mr.

13

Dennis' chance of survival ended.  He states:

> Dr. Schwartz: When asked the date and time when Mr. Dennis reached a point from which he could not recover and survive, Dr. Schwartz testified, "Certainly it's before his code.  He coded on the 24th."  (Depo. of Schwartz 60, D.E. No. 105-1.)
>
> Dr. Schwartz then testified, "for certain survival in an 83 year old with dead gut, before he developed any signs of sepsis would have been preferable.  So I'm giving him to the 23rd.  In reality, it might – who knows, is it the 20th, the 21st, 22nd?"  (Id. at 62.)
>
> Dr. Johnson: Dr. Johnson believes Mr. Dennis had a chance of survival until 9:15 p.m. on February 24, 2006.  (Depo. of Johnson 137, D.E. No. 106-1.)

(D.E. No. 104 at 3.)  Contrary to the Defendant's argument, it appears that Drs. Schwartz and Johnson agree that Mr. Dennis' chance of survival ended when the doctors treating him "coded" on February 24, 2006, at 9:15 p.m.  In response to Defense counsel's question of "when his death was more likely than not to occur," Dr. Schwartz responded "[w]hen he coded."  (Depo. of Schwartz 61, D.E. No. 105-1.)  Similarly, Dr. Johnson testified that "he had a chance of survival up to 9:15 on 2/24/06."  (Depo. of Johnson 136-37, D.E. No. 106-1.)  She further stated that "[w]ithout making absolutes, there's always a chance, but more likely than not, he did not have the opportunity to survive after those events of the evening of 2/24 at 9:15 p.m."  (Id. at 137.)  The two experts agree that February 24, 2006, at 9:15 p.m., the time of the code, was the point at which Mr. Dennis would no longer survive.  Dr. Schwartz's response of "I'm giving him to the 23rd.  In reality, it might – who knows, is it the 20th, the 21st, 22nd?" was provided in response to Defense counsel's question of "[w]hen . . . appropriate medical care would have reversed the condition that Mr. Dennis had and made it more likely than not that he would have survived."

14

When he was more than likely not going to die and when appropriate medical care would have made it more likely than not that he survived are not the same inquiry. Accordingly, the Court finds no contradiction in this portion of the deposition testimony of Drs. Schwartz and Johnson.

The Defendant further argues that Drs. Schwartz and Johnson disagree over when Mr. Dennis could have been taken to surgery:

> Dr. Schwartz: Dr. Schwartz believes Mr. Dennis was a candidate for surgery through February 21, 2006. (Depo. of Schwartz 89-90, D.E. No. 105-1.)
>
> Dr. Johnson: When asked, Dr. Johnson testified that she could not say when Mr. Dennis should have been taken to surgery because "that['s] not to me the focus." (Depo. of Johnson 25, D.E. No. 106-1.)

(D.E. No. 104 at 3.) Ms. Dennis disputes the Defendant's summarizations. She argues that Dr. Schwartz actually indicated that surgery was possible up until February 22, 2006, at 2:30 a.m. (D.E. No. 114 at 19.) She further claims that Dr. Johnson did in fact state when Mr. Dennis could have last been taken to surgery and placed that time at February 22, 2006, at 2:30 a.m. (Id. at 19-21.) The Plaintiff is of the position that Drs. Schwartz and Johnson agree that surgery was a viable treatment option until February 22, 2006, at 2:30 a.m.

After reviewing the testimony of both experts, it is not clear to the Court that the testimony of Drs. Schwartz and Johnson is contradictory on this issue. Dr. Schwartz first stated that Mr. Dennis would have been a candidate for surgery even until February 21st but that an operation should have been performed by that time. (Depo. of Schwartz at 89-90, D.E. No. 105-1.) However, Defendant's counsel further asked, "Anything that happened after the 21st, do you feel comfortable any interaction would not have made a difference in the outcome of this case?"

15

(Id. at 90.)  Dr. Schwartz responded "[n]ot necessarily" because "even around the 22nd, again, at 2:30 in the morning, heart rate 88, blood pressure 154/83, temperature 98.5, respirations 20, physiologically – even though he was agitated, restless, confused, physiologically the sepsis had not overwhelmed him."  (Id. at 91.)  The Plaintiff contends that Dr. Schwartz was of the opinion that surgery could have still been performed on February 22nd at 2:30 a.m.  (D.E. No. 114 at 19.) Upon reading Dr. Schwartz's deposition transcript, it is not clear to the Court whether he was of the opinion that surgery could have no longer been performed after February 21st or February 22nd at 2:30 a.m.  Because of that uncertainty, the Court is unable to find that there is a contradiction in the two expert's opinions.

E.      Testimony Regarding Dr. Escarcega's Treatment of Mr. Dennis

Dr. Sherman's primary point of contention regarding Dr. Johnson's testimony is that her assessment of Dr. Escarcega, the surgeon consulting on Mr. Dennis' treatment, differs from Dr. Schwartz's deposition testimony.  He argues:

> Dr. Schwartz:  Dr. Schwartz testified that he was critical of Dr. Escarcega's performance in evaluating Mr. Dennis. (Depo. of Schwartz 85, D.E. No. 105-1.)
>
> Dr. Schwartz further testified that based upon a reasonable degree of medical certainty, his opinion was that Dr. Escarcega did not conform to the acted [sic] level of professional practice for general surgeons practicing in Union City/Obion County, Tennessee o[r] a similar community in his care and treatment of Mr. Dennis.  (Id. at 89.)
>
> Dr. Johnson:  Dr. Johnson testified that she believed Dr. Escarcega conformed to the standard of care in his consultation with Mr. Dennis.  (Depo. of Johnson 62, 66, D.E. No. 106-1.)

> Dr. Johnson does not have any criticisms of any healthcare provider other than Dr. Sherman, and places 100% fault on Dr. Sherman. (<u>Id.</u> at 71, 145.)

(D.E. No. 104 at 3-4.) Sherman contends that Dr. Johnson's position that no fault should be placed on Dr. Escarcega is extremely prejudicial to him because he has raised a defense of comparative fault to Plaintiff's claims. (<u>Id.</u> at 4-6.) He urges that his own fault must be compared with that of Dr. Escarcega, and he has requested that Dr. Escarcega be placed on the jury verdict form for the apportionment of fault. (<u>Id.</u> at 6.) He argues that the contradictory opinions of Drs. Schwartz and Johnson requires that Dr. Johnson's testimony be excluded. (<u>Id.</u>)

In response, Dennis argues that "although Dr. Schwartz disagreed with Dr. Escarcega, he laid the fault squarely at Dr. Sherman's feet because Escarcega only provided a consult and Sherman never relinquished control of Hubert Dennis' care." (D.E. No. 114 at 22.) She further avers that although Dr. Schwartz was of the opinion that Dr. Escarcega did not conform to the standard of professional practice for general surgeons, he did not testify that Dr. Escarcega was the cause of Mr. Dennis' death. (<u>Id.</u> at 23.) Plaintiff also contends that Schwartz and Johnson testified to different standards of care: Schwartz as to the standard of care for a surgeon and Johnson as to the standard of care for a consultant. (<u>Id.</u> at 24.) Finally, the Plaintiff asserts that counsel for the Defendant elicited testimony from Dr. Johnson outside the scope of Dr. Schwartz's deposition and therefore any objection regarding her testimony should be deemed waived. (<u>Id.</u> at 25.)

The Plaintiff's arguments fail to persuade the Court. Upon review of the deposition testimony of both Dr. Schwartz and Dr. Johnson, it is clear that the two experts disagree over whether Dr. Escarcega's treatment of Hubert Dennis met the appropriate standard of care. Dr.

17

Schwartz was critical of Dr. Escarcega's treatment and evaluation of Mr. Dennis. (Depo. of Schwartz at 85, D.E. No. 105-1.) He testified that he did not "believe Dr. Escarcega conformed to the accepted level of professional practice for general surgeons practicing in Union City/Obion County, Tennessee or a similar community in his care and treatment of Mr. Dennis" because Mr. Dennis "had a high-grade partial to complete bowel obstruction . . . and . . . [Dr. Escarcega] should have been part of the care." (Id. at 89.) Although Schwartz also placed fault on Dr. Sherman as the attending physician for failing to "[e]ither bring Escarcega back into it, and if he doesn't agree with Escarcega, find another surgeon," he clearly also believed that Dr. Escarcega initially treated and evaluated Mr. Dennis incorrectly. (Id. at 86.) To the contrary, Dr. Johnson is of the opinion that Dr. Escarcega met the appropriate standard of care for a consulting surgeon. She testified in regard to Dr. Escarcega:

> I think he conformed to the standard for a consultant. He saw the patient. He evaluated the patient. He wrote down his conclusions and stated, "If you need me, I'll be available." That's really – He has no obligation to do anything more with this patient. He has done what a reasonable consultant would do. Consultants don't manage the patients unless invited by the attending. The attending is responsible period.

(Depo. of Johnson 62-63, D.E. No. 106-1.) She further testified that although she was only asked to evaluate Dr. Sherman, she didn't see anyone else at fault and would place 100 percent of the fault on Dr. Sherman. (Id. at 71, 145.) The Court finds that the testimony of Drs. Schwartz and Johnson with regard to Dr. Escarcega is clearly contradictory.

The Plaintiff raises several additional arguments in opposition to the Defendant's motion in limine to exclude Dr. Johnson's testimony. She argues: 1) that the Defendant should have obtained his own expert; 2) that the opinions rendered by Drs. Schwartz and Johnson are

substantially similar; 3) that the Court's previous orders have made Dr. Johnson an indispensable expert; and 4) that forcing her to use Dr. Schwartz's deposition testimony would be fundamentally unfair and inequitable. Without fully analyzing the merits of each argument here, the Court finds that they fail to address the relevant issue before the Court. At present, the Court must determine whether the testimony of Dr. Jennifer Johnson exceeds the Court's order that it be limited in scope to the subject matter and opinions contained in the deposition of the Plaintiff's previous expert, Dr. Schwartz.

In its March 9, 2010 order designating Dr. Jennifer Johnson as a substitute expert for the Plaintiff, the Court found that due to the unfortutanate circumstance of Dr. Schwartz's death and in light of Roberts, 325 F.3d at 784, "the most 'sensible' course of action would be to allow Plaintiff to substitute Dr. Johnson as an expert witness, but to limit the scope of her testimony so as to prevent any 'contradictory evidence' that could prejudice the Defendant." (D.E. No. 96 at 3.) In Roberts, the district court's decision to allow a substitute expert to testify was based on the understanding that the substitute would not go beyond the original expert's testimony and that the substitute would testify to the same conclusions. 325 F.3d at 782. The Sixth Circuit upheld the district court's decision as a "sensible compromise [that] allowed Galen to replace its expert without unfairly surprising Roberts with unexpected new opinions." Id. at 784. It described the district court's solution as "an equitable one, consonant with both the text and logic of Rule 37(c)(1)." Id.

This Court has attempted to reach a similarly equitable solution by permitting Ms. Dennis to substitute Dr. Johnson as an expert witness. However, the opinions espoused by Dr. Johnson in her deposition testimony deviate from those of Dr. Schwartz in a way that unfairly prejudices

the Defendant. The testimony of Drs. Schwartz and Johnson are contradictory with regard to what type of doctor should have been treating Mr. Dennis, the correctness of Dr. Escarcega's diagnosis of Mr. Dennis, and, most importantly, whether Dr. Escarcega's treatment and evaluation of Mr. Dennis met the required standard of care. Therefore, the motion in limine of the Defendant, Dr. Philip A. Sherman, is hereby GRANTED.

**IT IS SO ORDERED** this 4th day of October, 2010.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE